## WILLIAM E. TURNER *v.* JAMES COPLAND PARKER and others.

The wife's mortgage for the reimbursement of her paraphernal property, attaches only from the date of the actual receipt of the price by her husband.

An undertaker who has recovered a judgment for work and labor on a building, but whose contract was never recorded, and who neither prayed for, nor was allowed any privilege by the judgment, acquires no lien on the property or its proceeds.

The only property of a debtor having been sold under a *fi. fa*, the purchaser, after assuming the payment of certain claims, gave a twelve months' bond for the balance coming to the debtor. The conditions of the sale not having been complied with, the property was re-sold. The purchaser at the first sale having subsequently obtained a judgment against the debtor, seized in the hands of the sheriff the bond given by him to the debtor, claiming its amount out of the proceeds of the second sale. The bond was not sold but handed over to him. On a rule taken by the wife of the debtor, under art. 301 of the Code of Practice, to

Turner v. Parker and others.

show cause why the proceeds of the sale should not be brought into court, and distributed among the creditors of the defendant in execution, according to their privileges and mortgages : *Held,* that the purchaser at the first sale acquired no title to the bond by its delivery to him ; that it remained the property of the defendant in execution, representing the portion of the price supposed to be coming to him ; and that neither he, nor the party who pretends to have acquired his rights, can claim its proceeds in opposition to the mortgage creditors of the latter, the defendant in the execution.

A twelve months' bond is not a payment of the debt on which the execution was issued. It operates no novation, but leaves the original obligation in force against the debtor ; and its proceeds, when brought into court under art. 301 of the Code of Practice, are subject to the rights which the creditors originally had on the property.

A wife holding the first mortgage on the property of her husband, cannot, by re nouncing in favor of others, injure a subsequent mortgagee, by placing before him a larger amount of mortgages than originally existed. Subsequent mortgagees in whose favor she may renounce, transferring to them all her rights, will take her place to the extent of her mortgage, and she will retain her priority over other and inferior mortgagees only for the surplus of her claim, after deducting the claims of those in whose favor she renounced.

Where a suspensive appeal, taken from a judgment recovered in a lower court and recorded in the mortgage office, leaves the judgment unreversed, the plaintiff will be bound to urge any right he may have acquired on the property of the debtor by the recording of his mortgage, before resorting to the surety on the appeal bond. C. P. 579.

APPEAL from the Commercial Court of New Orleans, *Watts,* J.

MORPHY, J. This is a contest in relation to the distribution of the proceeds of a piece of property belonging to James C. Parker, sold under execution in this suit. This property, which was all that he owned, consisted of several lots of ground he had bought in suburb Saulet, in 1840, and on which he had erected a large ice house, at considerable expense. The controversy was opened by a rule taken by Amelia Parker, his wife, under article 301 of the Code of Practice, which provides that when the debtor has no other property to pay his debts, except that which has been seized, the sheriff may be enjoined from paying the plaintiff's claim out of the proceeds of the sale, and that such proceeds shall be brought into court, and distributed among his creditors according to their privileges and mortgages. The facts in relation to the various claims presented below, are as follows: John Staunton recovered a judgment against James C. Parker for $2,226 71, which was duly recorded on the 21st of

April, 1841. From this judgment Parker took a suspensive appeal; but it was finally affirmed by this court. On the 14th of February, 1842, Parker mortgaged the ice house property to the Bank of Louisiana for $6000, of which only $3,500 were paid to him, $2,500 having been withheld to await the result of the appeal taken from Staunton's judgment. Amelia Parker joined in the mortgage given to the bank, renouncing her legal mortgage in its favor, ceding and transferring to it all her rights upon the premises, and subrogating it to her place and stead. The Bank of Louisiana also acquired by transfer a claim of $751 02, on which Lyall and Davidson had obtained a judgment, with privilege on the ice house, for slating the roof of the building. On the 4th of March, 1842, Parker mortgaged the same property to Wm. E. Turner, to secure the payment of two notes, one for $3,085 50, and one for $1,000. Parker's wife joined also in this mortgage, and renounced her legal rights in favor of the mortgagee. These notes not having been paid at maturity, Wm. E. Turner obtained a judgment in the City Court of New Orleans on that for $1000, which note and judgment he afterwards transferred to Sidle & Stewart. Having also recovered a judgment in the Commercial Court on the larger note, he sued out an execution, under which the ice house property was seized, and sold on the 27th of March, 1843, for $12,500, on a credit of twelve months. John Mitchell, who became the purchaser of the property, assumed the payment of the debt due to the Bank of Louisiana, gave his bond to Turner for the debt due to him, and for the balance executed a bond for $1,685 19, which surplus was coming to the defendant James C. Parker. John Mitchell having failed to pay his twelve month's bond to Turner, an execution was issued on the same. At the second sale, J. M. Fisk became the purchaser of the property for $13,225, which is the fund now to be distributed. In February, 1843, John Mitchell having recovered a judgment against Parker for $1,697 41, took out an execution, and caused to be seized in the hands of the sheriff of the Commercial Court, the bond of $1,685 19, given by himself for the surplus of the price of the property coming to James C. Parker. The bond was never sold, but was handed over to Mitchell, who now

claims to receive its amount out of the proceeds of the second sale. In 1842, Mrs. Parker, finding that the affairs of her husband were embarrassed, sued for a separation of property, and obtained a judgment for the sum of $10,376, for so much received by her husband in 1840 and 1841, for the sale of a lot, a slave, and some bank stock, belonging to her, and for the restoration of some paraphernal property in kind, which judgment was recorded on the 8th of July, 1842. There is also a claim on the part of Municipality No. 2, for the sum of $320, for taxes due on the property sold. Mrs. Parker admits a superior right in Municipality No. 2, William E. Turner, Sidle & Stewart, and in the Bank of Louisiana as mortgagee, and as transferree of the privileged claim and judgment of Lyall and Davidson, but claims for herself a priority or right of preference over Staunton and Mitchell; and the contest seems to have been carried on in the lower court between these three creditors. The judge decided that whatever remained of the fund in dispute, after satisfying the superior claims of the above named creditors, should be paid over to Mrs. Parker; and that the title of J. M. Fisk to the property sold to him, should be held good and valid against all the parties to the present controversy. From this judgment, J. Mitchell appealed; and Staunton has prayed in this court that the judgment may be amended so as to allow him the priority he claims.

In support of her claim to be paid in preference to Staunton and Mitchell, Mrs. Parker offered in evidence, in addition to her judgment of separation, a sale executed by her to her father, J. Mitchell, on the 25th of June, 1839, of property she had inherited from her mother's estate, for the sum of $10,376, in four promissory notes, each for the sum of $2,594, payable on the 1st of January, 1840, the 1st of July of the same year, the 1st of January, 1841, and the 1st of July of that year. Lewis, the notary, who executed the sale, testified that these four notes were delivered to James C. Parker; and Latrap, the foreman of Mitchell, stated that, early in 1843, Mitchell told him he had paid all the notes except one. From this testimony it appears that the last note was not paid at maturity; but even if it had been paid, the amount would have been received by Parker af-

ter the recording of the mortgage of Staunton, on the 21st of April, 1841. The wife's mortgage attaches only from the date of the actual receipt of the price of her paraphernal property by her husband. It has not been shown that Parker disposed of this note, or converted it to his individual use before its maturity. Her mortgage then, as against Staunton, exists only to the amount of $7,782. Civil Code, art. 2367. *Foster* v. *Her Husband.* 6 La. 25. *Dimitry* v. *Pollock.* 5 Rob. 348. Before we consider the conflict which arises between Mrs. Parker and Staunton, it is proper to dispose of the claim of J. Mitchell, who contends that he should be paid in preference to both, as the bearer of the bond of $1,685 19. The evidence shows that the debt on which he obtained a judgment, was for work and labor done upon the ice house; but there never was any contract recorded, nor any privilege prayed for by him, nor allowed by his judgment. He had, therefore, no lien upon the property or its proceeds. Has he acquired any by the delivery of the bond to him? We think not. He never became, by such delivery, the legal owner of the bond. It continued to remain the property of James C. Parker, and represented the portion of the price which it was supposed was coming to him. Had Mitchell paid his bonds, the proceeds would have been subject to distribution under art. 301 of the Code of Practice ; and James C. Parker, whose rights Mitchell pretends to have acquired, could have set up no right to any portion of such proceeds, in opposition to his mortgage creditors. This court has held that a twelve-months' bond is not a payment of the debt on which execution has issued ; that it operates no novation, and leaves in force the original obligation against the debtor. 2 Mart. 179. 7 Ib. N. S. 205. If this be true, the property having been sold on one of the twelve-months' bonds being delivered to the clerk, according to art. 719 of the Code of Practice, the money now in court is subject to the rights which the creditors originally had on the property. In the case of *Willis* v. *Her Husband,* in 7 Robinson, where a balance in money proceeding from the sale of land and slaves of the defendant, sold under execution, had been levied upon by a judgment creditor, we held that, under arts. 401, 402 and 403 of the Code of Practice, the

Turner v. Parker and others.

wife could claim her right of preference over him by reason of her legal mortgage on the property sold, as the money was subject to the privileges and mortgages which existed on the property itself.

The conflicting claims of Stanton and Mrs. Parker now remain to be considered. The view we have taken of the effect of the latter's renunciations in favor of William E. Turner and the Bank of Louisiana, renders it unnecessary to examine the position, that the wife has no legal mortgage as against third persons for her paraphernal rights, until her mortgage is recorded, even if we could consider this question as an open one in this court.* It is admitted on all hands, that the ice house pro-

---

*T. Slidell, for Staunton. A wife has no legal mortgage, as against third persons, for her *paraphernal* rights, until her mortgage is recorded.

Art. 3280 of the Civil Code, declares that " no legal mortgage shall exist except in the cases determined by the present Code."

Art. 3297 provides, that among creditors, the mortgage whether conventional, legal or judicial, has force only from the time of recording it in the manner hereafter directed, except in the cases mentioned below. The exceptions are shown in article 3298, which is as follows : " A mortgage exists without being recorded in favor of minors, interdicted and absent persons, on the property of their tutors, curators and others, over whose property the law grants them a tacit mortgage, either general or special. The mortgage of the wife on the property of her husband for her *dotal* rights, does also exist without being recorded." In this respect, the new Civil Code has changed the law established by the Code of 1808, which was in these words : (See page 454, art. 54.) " Privileges on moveables, as well as on immovables, and legal mortgages, have their effect against third persons without any necessity of being recorded."

In the case of *Pain* v. *Perret*, 10 La. page 303, it was held that the legal mortgage attaches both for dotal and paraphernal rights, without being recorded ; but it will be observed by reference to the statement in that case, at page 301, that the greater portion, at least, of the wife's claim, arose in 1817. The case of *Lanusse* v. *Lana*, was also a case under the old Code.

But it is said that article 2367 of the Civil Code creates the legal mortgage in the wife's favor, and that this article would be rendered nugatory by the construction for which we contend. The article is in these words : " The wife may alienate her paraphernal property with the authorization of her husband, or in case of refusal or absence of the husband, with the authorization of the judge ; but should it be proved that the husband has received the amount of the paraphernal property thus alienated by his wife, or otherwise disposed of the same

perty was the only property owned by Parker since 1841, when Staunton obtained his judgment, and had it recorded. The only mortgages which stood before his on the property, were those

for his individual interest, the wife *shall* have a legal mortgage on all the property of her husband for the reimbursing of the same."

It is a sound rule of interpretation, that where there may be a seeming contradiction of two provisions of law, such a construction, if possible, should be adopted as will give effect to both.

The articles in question are susceptible of such a construction.

In the first place, the expression of article 2367, is *prospective*, not retrospective—if it be proved that the husband has received the amount of the paraphernal property thus alienated by his wife, or otherwise disposed of the same for his individual interest, the wife *shall* have a legal mortgage, &c. Rather than destroy the positive declaration of article 3297, that *all* mortgages to affect third persons, creditors, should be recorded, is it not more reasonable to say that the true meaning of article 2367 is, that the wife *shall* have a legal mortgage when she shall have proved her claim in a court of justice. Unless some other provision of the Code (and I know of none,) declares that the wife's mortgage for her paraphernal rights, attaches *retrospectively* from the date of the husband's appropriation, why should the doctrine of retrospection be *assumed* ? The whole doctrine of tacit mortgages is in *derogation of common right;* and should, therefore, be rigidly restrained to express enactments.

This view of the subject is strongly corroborated, by recurring to the law respecting *dotal* rights ; for there we find that the lawgiver has expressly declared the retrospection. Civil Code, art. 2355, sects. 1 and 2. " The wife has a legal mortgage on the immovables, 'and a privilege on the moveables of her husband, to wit :

" I. For the restitution of her dowry, as well as for the replacing of her dotal effects which she brought at the time of her marriage, and which were alienated by her husband ; and this *from the time of the celebration of the marriage*."

" For the restitution, or the replacing of the dotal effects which she acquired during the marriage, either by succession or by donation, *from the day when such succession devolved to her, or such donation began to have its effect*."

Surely this difference of legislation cannot be treated as accidental. There is an obvious explanation of the motive which induced the lawgiver to establish the principle of retrospection in the case of dotal, and to omit it in the case of paraphernal rights.

The dotal property of the wife can be so established by the *marriage contract* alone. It can be created in no other way. Civil Code, art. 2318. " Whatever in the marriage contract is declared to belong to the wife, or to be given to her on account of the marriage by other persons than the husband, is part of the dowry, unless there be a stipulation to the contrary."

of Lyall and Davidson for $751 02, since transferred to the Bank of Louisiana, and that of Mrs. Parker for $7782. Had she not renounced her mortgage in favor of the Bank and Turner, it is clear that the property having brought $13,225, his mortgage would have been paid in full. The question then is, could Mrs. Parker, who held the first mortgage on the property, make a renunciation of her rights in favor of other persons at the expense and to the injury of Staunton, whose mortgage

---

Now a marriage contract can only be made by a public act. Civil Code, art. 2308. " Every matrimonial agreement must be made by an act before a notary and two witnesses. The practice of marriage agreements under private signature, is abrogated." And by article 3334 it is made the duty of the notary to record such acts.

But paraphernal rights may exist not only independently of a notarial marriage contract, but without any contract whatever, except the mere marriage of the parties. The public then can resort to notarial evidence to ascertain the dotal rights of the wife, at least as to such portion as was brought at the time of the marriage; but the paraphernal rights are matters resting entirely *en pais*.

In the one case, the public has the warning of public written evidence. In the other case they have no such warning, and every one must rely on his own industry in prying into the private concerns of his neighbour.

But again, article 3297 does not annul article 2367. It only restricts it, and even this restriction is qualified. The wife shall have a legal mortgage for her paraphernal rights, says article 2367. But this legal mortgage shall not have force, says article 3297, *against creditors*, until it is recorded.

Now, in the first place, this is not an abrogation, but a mere restriction of the wife's right of mortgage, limited to a certain class of third persons, to wit, *creditors* ; and, in the second place, it is a restriction of the wife's right of mortgage.

The decision in *Pain* v. *Perret*, 10 La. 303, seems based upon the argument that it is difficult to say why the indulgence shown to the wife by the law in regard to her *dotal*, should not be extended to her in case of her *paraphernal* property—in other words, upon the argument of expediency. Such an argument might prevail with the legislature to amend the law ; but cannot support the judgment of a court, whose province it is to interpret, but not to legislate. As to the impossibility of the wife's recording her paraphernal claim, it is clear that the same proof which would suffice to establish her claim against a creditor, would also suffice to obtain a judgment against the husband ; and that judgment, or *even the proof judicially taken*, could be recorded. In many cases proof susceptible of being recorded would exist extra-judicially, as in a sale of the wife's paraphernal land, slaves, or moveables by a written act, whether public or private, where the husband acknowledges receipt of the price in the act of sale.

stood immediately after her's ? · In other words, can she, with-
out his consent, change his position, and place before him a
larger amount of mortgages than there existed before ? It is
clear that she could not. The renunciation and cession of her
rights, which she thought proper to make, should injure no one
but herself. The only effect they can have is to place the
Bank and Turner in her stead, to the amount of their debts, and
she can retain the priority over Staunton only for the surplus of
her claim after satisfying those of the persons in whose favor
she renounced. If, notwithstanding her renunciation, she could
retain her rank as a mortgage creditor for the full amount of her
claim, she would have surrendered nothing, in case the property
had brought enough to pay her own claim as well as those of
the Bank and Turner. The only sufferer would be the next
mortgage creditor, who would lose his rank and priority over
these new and subsequent mortgagees, in consequence of her re-
nunciation. This question is by no means a new one, although
it presents itself for the first time to the consideration of this
court. We find it treated by Troplong in his work on Privileges
and Mortgages. He supposes the case before us: " Pierre
emprunte de l'argent à Tertius sous l'hypothèque du fonds Cor-
nélien. La femme de Pierre comparait au contrat, et renonce
à son hypothèque sur ce fonds. Pierre étant tombé en faillite
le fonds Cornélien est vendu ; alors se presentent à l'ordre, 1o
la femme de Pierre pour 4,000 fr. ; 2o. Secundus pour 5,000 fr. ;
3o. Tertius pour 4,000 fr.

D'après l'argument qu'on peut tirer de la loi Claudius Felix
16, Dig. *qui potior*, voici ce qui arrivera. On prélevera les fonds
dus à la femme de Pierre ; mais cette somme sera donnée a
Tertius en vertu de la renonciation que l'épouse a faite en sa fa-
veur. Secundus touchera ensuite en deuxieme ordre les 5,000
fr. qui lui sont dus. S'il reste des fonds, la femme les prendra en
place de Tertius. Ainsi l'épouse sera créancière chiragraphaire
á l'égard de Tertius. Mais son rang n'en subsistera pas moins
pour laisser *Secundus* au second rang. Car ce qui est intervenu
entre *Tertius* et l'épouse de Pierre est pour lui *res inter alios
acta.*" 2 Troplong, Des Priv. et Hypoth, No. 600. 10 Toullier,
No. 197. Dig. B 20, T 4. L. 16, *Qui potiores.*

The case put by Troplong is that of a simple renunciation of the wife, which, in his opinion, is equivalent to a transfer of her rights. In the present case, Mrs. Parker *cedes, transfers* and *conveys* her rights in both acts of mortgage; and in that of the Bank, she expressly subrogates it to all her rights in the property. It is urged that, if Staunton has suffered, it is attributable to his own neglect; that having had his judgment recorded so long before Mrs. Parker's renunciations, he should have had the property seized and sold; that if he was prevented from so doing by an appeal, he no doubt required good security from Parker, and that this claim of Staunton is now prosecuted, not for his benefit, but for that of the security, who is personally bound, and has no recourse against the property. To this the answer is obvious, that Staunton cannot look to Parker's security on the appeal bond, until all the property, real and personal, of the principal debtor is exhausted; and that it is his duty to urge his claim in the present distribution, and obtain whatever he can for the benefit of such security. Code of Practice, art. 579. *Chalaron* v. *McFarlane and others,* 9 La. 229.

J. M. Fisk, the purchaser of the property at the second sale, intervened in the proceedings on the rule taken by Mrs. Parker, and prayed to be protected in his purchase from the claims of the parties to this controversy, and particularly from the legal mortgage of Parker's wife, this being the only property owned by him; it is clear that, under the sheriff's sale and the distribution of the price among all the mortgage creditors of the defendant, among whom his wife figures, the property has passed into the hands of the purchaser free from any incumbrance.

It is, therefore, ordered and decreed, that the judgment of the Commercial Court be reversed, and it is ordered and decreed that the sum of $13,225 be distributed as follows:

1st. That the claim of Municipality No. 2, for taxes, to wit, $320, be paid, with costs.

2d. That $751 02, be paid to the Bank of Louisiana, as transferree of the judgment of Lyall & Davidson, with legal interest up to the day of the sale to Fisk, to wit, the 6th of May, 1844, with all costs as allowed by said judgment.

3d. That $3500 be paid to the same Bank, with nine per cent interest thereon, from the 14th of February, 1843, up to the date aforesaid, with costs.

4th. That $3085 50, be paid to William E. Turner, with ten per cent interest thereon, from the 4th of November, 1842, up to the date aforesaid, with costs of suit.

5th. That $1000 be paid to Sidle & Stewart, transferrees of the judgment of *William E. Turner* v. *James C. Parker,* obtained in the City Court, with ten per cent interest from the 2d day of July, 1842, up to the date aforesaid, with costs of suit.

6th. That $2226 71, be paid to J. Staunton, with costs.

7th. That the balance of the proceeds of the sale, if there be any, be paid to Amelia Parker.

It is further ordered, that the title of J. M. Fisk to the property sold to him under the twelve-months' bond in this suit, be declared good and valid against all parties thereto, and that said property may be held by him free from any mortgage they may have had upon it; the costs incurred on the rule below to to be paid out of the fund to be distributed—those of this court to be borne by the appellant J. Mitchell.

*T. A. Clarke,* for the appellant.

*Hoffman, T. Slidell, L. Peirce* and *Preston,* contrâ.