No. 13,755.

L. W. STUBBS vs. J. M. LEE, JR., ET ALS.—THIRD OPPOSITIONS OF MRS. S. J. SEALE, KINGSLAND & DOUGLASS MANUFACTURING CO., AND OUACHITA NATIONAL BANK.

### SYLLABUS.

1. "A" and "B" owned each an undivided half of certain property. They executed their *solidary* promissory note, secured by special mortgage upon the entire property. The debt for which the note was given was in reality "A's" debt only to the extent of one-half. He paid that half, leaving the balance due the debt in reality of "B." He not paying, the creditor obtained a judgment *in solido* against both parties and caused the entire property to be seized and sold, "A" becoming the adjudicatee and paying the entire bid to the sheriff. One-half of the bid more than sufficed to pay the judgment creditor

Stubbs vs. Lee.

in full. Payment of this judgment should be made from the half of the price representing "B's" half of the property, and the half representing "A's" half should be returned to him by the sheriff, "B's" creditors having no claim upon that portion of the price, but being limited to the balance remaining of "B's" portion after payment of the seizing creditor.

2. The effect of a judgment obtained by a creditor of inferior rank setting aside as *"simulated"* a prior special mortgage appearing on the records, is not to *advance the party obtaining this judgment* to the place which the special mortgage would have occupied, had it been valid. The effect is to throw forward all parties, but in their regular order of registry.

3. The effect of a judgment obtained by a creditor of inferior rank setting aside a first judicial mortgage on the property of a common debtor, so far as that creditor's rights are concerned, not as *"simulated"* but as *"fraudulent,"* does not enure to the benefit of all the creditors of the debtor. As between the party holding the judicial mortgage and creditors not attacking, rights are to be determined by the order of registry. The plaintiff in the revocatory action takes from the money falling to the first judicial mortgage creditor the amount necessary to pay his claim, and the judicial mortgage creditor to that extent is thrown behind (as an ordinary creditor) the subsequent mortgages which it would otherwise prime, but for any surplus above that amount it retains its priority of rank over subsequent creditors not attacking it.

A PPEAL from the Sixth Judicial District, Parish of Ouachita— *Hall, J.*

*Hudson, Potts & Bernstein,* for Mrs. S. J. Seal, Third Opponent and Appellant.

*Andrew Augustus Gunby,* for Kingsland & Douglas Manufacturing Co., Third Opponent, Appellant.

*Stubbs & Russell,* for Ouachita National Bank, Third Opponent, Appellee.

STATEMENT OF THE CASE.

The opinion of the court was delivered by

NICHOLLS, C. J. On January 6th, 1891, Mrs. E. J. Lassiter sold to Mrs. Sarah J. Seale and John M. Lee, Jr., certain property described as being partly in the parish of Ouachita and partly in the parish of Union, for the price of five thousand two hundred dollars, of which two thousand dollars were paid in cash and the balance represented by two joint and several notes of the purchasers of sixteen hundred dollars each, with interest thereon at eight per cent. from the date of

sale, payable, respectively, on the 1st of January, 1892, and 1893. Payment of these notes was secured by special mortgage and vendor's privilege on the property purchased, as was also payment of all the costs to be incurred in enforcing such payment, including attorney's fees, fixed at ten per cent. on the amount sued for. This act was duly recorded in the parishes of Ouachita and Union.

On the 24th of April, 1893, Mrs. Sarah J. Seale sold the half of the property which she had so acquired to her joint owner, John M. Lee, Jr., the property being described as being "principally" in the parish of Ouachita, and in addition to this property she conveyed an interest which she had acquired with John M. Lee, Jr., in the succession of Joseph Baker and wife—and an interest in an unexpired lease of the Arons place.

The price and consideration was:

First: That Lee assumed the discharge and payment of the note given by the vendor and himself, payable January, 1893, and to hold Mrs. Seale harmless therefrom; it being declared that it was understood that Mrs. Seale had fully discharged the note for the same amount due Mrs. Lassiter, January, 1892, and that this note was surrendered to Lee for cancellation.

Second: The sum of seven thousand dollars, with interest to be paid thereon from the 1st of January, 1893; this amount was represented by Lee's note payable 1st of March, 1894.

Payment of this note and all costs incurred in the enforcement thereof, including attorney's fees, fixed at 5 per cent., was secured by special mortgage and vendor's privilege on all the property purchased. On the same day (24th of April, 1893) Mrs. Seale sold to John M. Lee, Jr., two other properties, the "Pace" place, and the "Rock Row" place, for $7,000 on credit, for which she took Lee's note, secured by special mortgage and vendor's privilege. Lee having paid nothing, Mrs. Seale, on the 3rd of August, 1895, obtained an order of seizure and sale, and on the 25th of January, 1896, the property sold by Mrs. Seale to Lee was all sold for $5,778.67, leaving over $10,000 still due upon her mortgage notes.

At that sale the half interest in the Port Union plantation sold by Mrs. Seale to Lee, brought only $1,334. On December 7th, 1896, Mrs. Seale sued Lee, and on the 27th of February, 1897, obtained judgment against him for $14,000, with interest and attorney's fees, less $5778.67, the amount of the adjudication to her on the 25th of January, 1896.

The first of the two notes, the one due January 1st, 1892, was paid by Mrs. Seale. The other note, due January, 1893, with some credits, was transferred by Mrs. Lassiter to Linton W. Stubbs. On June 23rd, 1899, Stubbs sued Lee and Mrs. Seale to recover upon the balance of this last note. He obtained judgment, and under a writ of *fi. fa.* issued upon this judgment the entire Port Union plantation, which had been bought by Lee and Mrs. Seale from Mrs. Lassiter, was adjudicated to Mrs. Seale for five thousand seven hundred dollars, Mrs. Seale at that time owned one undivided half of the property and Lee the other half. Out of this amount the sheriff paid the plaintiff, Stubbs, the amount of his debt, with all interest, costs and fees, aggregating $2333.59, which satisfied the writ in full and left in the sheriff's hands the sum of $3228.86. Previous to this sale, third oppositions were filed by Mrs. Seale, the Ouachita National Bank and the Kingsland Manufacturing Company. Mrs. Seale claims this amount as being the owner of one undivided half interest in the property and as having the oldest mortgage upon the property.

She claims that having paid the note of the 1st of January, 1892, given by herself and Lee jointly and severally, as part of the purchase price of the property from Mrs. Lassiter, secured by mortgage on the entire property, she became, as against Lee's interest, subrogated to the rights of the creditor, Mrs. Lassiter.

That this amount of $800, with interest and costs, one-half of the note, entitled her to a special mortgage and vendor's privilege on the property, ranking and taking effect from the 6th of January, 1891, and that for the balance she was entitled to a preference and precedence over the Kingsland & Douglas Manufacturing Company by virtue of the prior recording of her judgments against Lee and by virtue of having defeated and annulled a fraudulent sale of Lee's interest in the land to his brother-in-law, Webb, on August 6th, 1895. She asserts a precedence and preference over the Ouachita National Bank, because in her two suits, Nos. 4558 and 4559, the court decreed the judgment in favor of the bank against Lee to be fraudulent, and annulled the same in so far as it affected Mrs. Seale's claims; that the effect of the judgment in these two cases was to postpone the claims of the bank under its judgment in suit No. 4397 to her claims. Therefore she should be paid first out of these proceeds. The Ouachita National Bank claims those proceeds under a judgment rendered upon a confession of judgment by Lee in suit No. 4397 on the 24th of December, 1896, and by

virtue of its having been recorded prior to the judgments of either Mrs. Seale or the Kingsland & Douglas Manufacturing Company. To this opposition, Mrs .Seale answered that the note and title of the bank thereto, and the judgment based thereon, had been, by judgment of the District Court, declared fraudulent and of no effect, so far as Mrs. Seale, the plaintiff in the *revocatory* actions, was concerned.

The Kingsland & Douglas Manufacturing Company, in their third opposition, claim a priority and preference over Mrs. Seale and the bank, on the ground that their judicial mortgages were first recorded, and hence primed, the judicial mortgages of Mrs. Seale and the bank. They deny that by the payment of Mrs. Seale of the $1600 note, given by herself and Lee to Mrs. Lassiter, she was subrogated to the rights of Mrs. Lassiter. They plead the prescription of five years to this claim, and deny that by the payment of taxes she was subrogated to the lien and privilege securing the same.

On the 6th of August, 1895, an act was passed by which Lee purported to sell his undivided half of the " Port Union " plantation (bought from Mrs. Lassiter) to his brother-in-law, Webb, for $3000, represented by Webb's note, secured by special mortgage and vendor's privilege. This note was transferred by Lee to the Ouachita National Bank as collateral security for debts due by him to the bank. On the 24th of December, 1896, the Ouachita National Bank obtained a judgment by confession against Lee for $3000, and this judgment was recorded in Ouachita parish on the — day of ————, and in Union parish on the — day of ————.

Suits were brought by Mrs. Seale to annul the sale from Lee to Webb, and the note and mortgage given thereunder, and to declare fraudulent both the bank's title to the note and the judgment of the bank against Lee, and on the 1st of May, 1900, judgment was rendered decreeing the sale from Lee to Webb on the 15th day of August, 1895, to be a simulation and annulling as fraudulent the judgment which had been confessed by Lee in favor of the Ouachita National Bank, in so far as these claims affected those of Mrs. Seale. The attack, however, upon the title of the bank as the pledgee of the note of $3000 was not successful.

The Kingsland & Douglas Manufacturing Company had obtained two judgments against Lee, the first being on October 8th, 1895, against Lee and Parks for $231.36, with eight per cent. interest, and 10 per

Stubbs vs. Lee.

cent. attorney's fees. (This judgment was recorded in Ouachita parish on October 8th, 1895.)

The second was against Lee and Parks for $1958.65, with interest and attorney's fees. This judgment was recorded in Ouachita parish on February 1st, 1896, and in Union parish on the — day ————.

The District Court rendered judgment decreeing that after paying the debt of the plaintiff, Stubbs, Mrs. Seale be paid one-half of the proceeds still remaining in the hands of the sheriff by virtue of her title to one undivided half of the property, this amount going to Mrs. Seale being $1614.43. That, in other respects, her demands be rejected, and that the other half of the balance in the hands of the sheriff ($1614.43), after payment of the costs of the proceedings, be paid to the Ouachita National Bank, and the Kingsland & Douglas Manufacturing Company, share and share alike, as a credit on their respective judgments and mortgages against J. M. Lee, Jr.

From this judgment Mrs. Seale and the Kingsland & Douglas Manufacturing Company appealed.

The Ouachita National Bank filed no pleadings or brief in the Supreme Court.

## OPINION.

When Lee and Mrs. Seale purchased jointly the Port Union plantation from Mrs. Lassiter, they became each the owner of one undivided half of the property, and, as between themselves, each owed one-half of the price, although *quoad* the seller, Mrs. Lassiter, each owed the entire debt, secured by special mortgage and vendor's privilege on the entire property, by reason of the *solidary* form of the note and the obligations which the purchasers assumed towards her. In the Succession of Daigle, 15 Ann. 584, this court held that "where two parties purchased together certain landed property, each one undivided half, and furnished for the price their joint and several notes secured by mortgage on the land purchased, these parties must be considered as purchasers and principal obligors, each for one-half only of the property purchased, and as sureties for each other (personally and through their property), mutually, as to the other half."

Under ordinary circumstances and in the absence of a contrary understanding and evidence, partial payments made by either of the parties would be presumed to have been joint payments for the two— that is to say, the party making the payment would be presumed as

paying his own debt to the extent of one-half of the partial payment and paying the debt of his co-purchaser to the extent of one-half of the payment. The effect of partial payments so made, if made exclusively with the money of the party paying, would be, so far as the co-purchaser was concerned, to make him a debtor to the party making the payment to the extent of the payment made on his account, this debt being secured by subrogation *pro tanto* to the mortgage held by the seller. The parties, as between themselves, might agree that all partial payments by either, from their own means, should be held to be to the full extent of the payment by that person of his own individual portion of the price.

The rights of the seller, however, would remain unaffected by special agreement between the parties.

He would not be called on to know the circumstances of the different payments. He would stand on the original contract rights, no matter how much the purchasers might alter their relations *inter se.* (Civil Code, Articles 1415-1416.)

In this particular case there is no evidence as to whose means contributed to the cash payment made to Mrs. Lassiter, at the time of the sale by her. We must assume that each one of the purchasers paid one-half.

We have evidence, however, in the act of sale of Mrs. Seale to her joint owner, Lee, of her undivided half of the Port Union plantation, that the first of the two credit notes given by the purchasers, the note which fell due in January, 1892, was paid in its entirety by Mrs. Seale.

Lee expressly admits this, and we think this admission made by Lee in the very act by which he acquired this property, was good, not only as against Lee, but as against Lee's subsequent creditors, seeking to apply the proceeds of this property to the payment of their debts, to the prejudice of Lee's vendor.

By making this payment Mrs. Seale had paid out an amount equal to her individual half of the purchase price, while Lee had only paid one-half of the cash payment.

The outstanding note, therefore, due in January, should, for the purpose of equalization of the parties, have been paid in its entirety by Lee. It was not only equitable and right that he should do so, but he expressly agreed in the act last referred to, that he would pay that note in full. We think this admission made by Lee, coupled with his undertaking to pay the whole of the last note in full, was intended by

the parties to be a division, *inter se,* of the debt, and to be an imputation of the payments which had been made by Mrs. Seale on her individual portion of the price, a consent that her property (so far as these parties could control the situation) should be free from the mortgage securing the unpaid portion of the price, and that the remaining note should be (as between the parties) due entirely by Lee and be secured as to its payment by the mortgage on his half of the property.

Lee's legal obligation to pay his equal share of the price and his express promise to pay the whole of this note, were not carried out, and Stubbs, who had become the owner of the last note, brought suit thereon for the full amount against Lee and Mrs. Seale, and obtained a judgment against them *in solido* for the amount of the note, interest, costs and attorney's fees, with recognition that this amount was secured as to its payment by special mortgage and vendor's privilege on the whole property.

This judgment he was unquestionably entitled to, and in execution of it he very properly seized the entire property mortgaged, and sold it under a writ of *fi. fa.* which he had caused to be issued. This he had a legal right to do, no matter what might be the situation of Lee and Mrs. Seale as between themselves in respect to the debt and the mortgage. It was none the less true that when this judgment was executed it was in enforcement of a debt due entirely by Lee (as between himself and Mrs. Seale), and that when her share of the property was seized and sold it was sold in payment of a debt which Lee owed in its entirety, and which he had expressly bound himself to Mrs. Seale to pay. Mrs. Seale, as a matter of course, was powerless to prevent the sale of her property as against Stubbs. She submitted to the sale, and the whole property was adjudicated to her, and she paid the entire bid. It is a mistake to say, however, that she became the owner of the entire property through this sale. She was already the owner of one-half and she acquired no new title nor new ownership to that half, though she did acquire a new ownership in Lee's half. C. C. 2443. The property seized and sold in this case and under its special facts was *quoad* everybody but the seizing creditor Lee's undivided half of the plantation.

The money which she paid over to the sheriff went to the extinguishment and payment of a debt due entirely by Lee and was received to the extent of Stubbs' judgment by a creditor of Lee (for the full amount of the judgment), who held a first mortgage and special privi-

lege on his property. Mrs. Seale had the right, under the circumstances of the case, to insist that an amount of the money received by the sheriff from her up to the amount of Stubbs' judgment, should be imputed to the payment of Lee's debt and taken from the portion of the proceeds of sale representing Lee's half of the property. If the seizing creditor's rights would have been injuriously affected by this, Mrs. Seale, as a matter ofcourse, would not be justified in urging this method of payment or application of the price. The subsequent creditor of Lee could not insist that any portion of Stubb's judgment should (so far as they were concerned) be paid by Mrs. Seale's money except to the extent that she received an equivalent for the same from Lee's property. To the extent of that judgment she paid Stubbs, as purchaser of Lee's property, not as debtor of Stubbs.

As the entire property was adjudicated to Mrs. Seale for fifty-seven hundred dollars, and as each half must be taken to be equally valuable, Lee's half of the property must be held to have been worth half of that amount, or twenty-eight hundred and fifty dollars. Stubbs' judgment, with interest and costs, amounted to twenty-three hundred and twenty-three dollars and fifty-nine cents.

Taking this amount out of Lee's share of the price ($2850), and giving them to Stubbs, Lee's first mortgage creditor, there remained in the hands of the sheriff, out of the proceeds of the sheriff's sale, the sum of five hundred and sixteen dollars and forty-one cents ($516.41) to be distributed among Lee's creditors according to their respective rights.

The Port Union plantation is situated partly in the parish of Ouachita and partly in the parish of Union. The relative values of these different parts does not very satisfactorily appear from the record. No separate appraisement of the two portions was made. Certificates of mortgages were produced at the judicial sale from the office of the recorder of mortgages of these two parishes. It appears from each that the special mortgage and vendor's privilege in favor of Mrs. Lassiter, by reason of the sale from her to Lee and Mrs. Seale, was first in order of registry. The priority of that mortgage over all others is conceded. So far as the parties before the court are concerned, the mortgages were recorded in the following order:

The *second* recorded mortgage in *"Ouachita Parish"* was a *special mortgage* for seven thousand dollars, and interest, given by Lee to Mrs.

Seale. (There is nothing to indicate that this mortgage covers the property involved in this suit.)

The *third* mortgage is a judicial mortgage in favor of the *Kingsland & Douglas Manufacturing Company against Lee and Parks* for *two hundred and thirty-one dollars,* with interest, from a judgment recorded October 8th, 1895.

The *fourth* mortgage is declared to be a *special mortgage* executed by *Lee in favor of Webb* for $3000, with interest, due January 1st, 1896; recorded January 13th, 1896.

The fifth mortgage is a judicial mortgage in favor of the Kingsland & Douglas Manufacturing Company against J. M. Lee, Jr., and J. W. Parks for $1958.65, with eight per cent. interest from different dates.

The sixth mortgage is a judicial mortgage in favor of Mrs. Seale and against J. M. Lee and Parks for $1500 and interest; for $704, with interest; for $1999.44, with interest; for $835.28, with interest; for $926.50, with interest, subject to various credits. Recorded February 27th, 1897.

The seventh mortgage is a judicial mortgage in favor of Mrs. Seale against Lee for $14,000, with interest, subject to credits. Recorded February 17th, 1896.

In *Union Parish* the mortgages from their order of record are:

First—The mortgage held by Stubbs, the seizing creditor.

Second—A *judicial* mortgage against Lee in favor of the Ouachita National Bank, rendered in suit No. 4397 on the docket of the District Court for the parish of Ouachita, for the sum of $3000, with eight per cent. interest from different dates.

This judicial mortgage is evidently the mortgage upon the judgment annulled at the suit of Mrs. Seale, so far as it affected her rights.

Third—*A judicial mortgage* in favor of Mrs. Seale against J. M. Lee *et al.* for $1500, for $704, for $1999.44, for $835.28, and for $926.50, with interest from different dates and subject to certain credits.

Fourth—*A judicial mortgage* in favor of the Kingsland & Douglas Manufacturing Company against Lee and Parks for $195.65, with interest from different dates, and attorney's fees.

The note sued upon herein by Stubbs shows a credit on January 4th, 1894, of $256; on January 22d, 1894, of $128; on January 1st, 1895, of $128; on February 13th, 1896, of $128. The evidence does not disclose who made these payments. If Lee made them, the situation would be different from what it would be if Mrs. Seale made them, for if the

latter made them she would to that extent have paid a debt due on the note for which she and Lee were bound *in solido, quoad* to the holder, but, in fact, for the sole benefit of Lee, her *solidary* debtor.

It is claimed that the judgments which figure on the certificates as judgments against Lee and Parks were judgments against these parties jointly and not severally. It is claimed by Mrs. Seale that the annulling of the sale from Lee to Webb and of the judgment by confession rendered in favor of the Ouachita National Bank against Lee, enured exclusively to her benefit, and that she became subrogated to the rights of the bank or substituted therefor as to rank in place of the bank; that the sale and judgment were annulled only in so far as her rights were concerned, but remained good *quoad* all other parties.

These claims are contested by the Kingsland & Douglas Manufacturing Company. It contends that the sale was set aside as a *simulation* and that the judgment enured to the benefit of all the creditors of Lec. That also the judgment of Mrs. Seale declaring the judgment by confession held by the Ouachita National Bank to be fraudulent enured to the benefit of all the creditors. It denies that the effect of the annulment of the sale and of the confession of judgment was to subrogate Mrs. Seale to the rights which the bank would have had, had the judgment been valid and the sale real, or to substitute her as to rank in the place of the Ouachita National Bank.

It maintains that after the sale and judgment were set aside, the Ouachita National Bank practically withdrew from the contest, and it insists that the court was without warrant in giving a judgment under the circumstances in favor of the bank for any amount.

Restating the situation we find, first, that the record in Ouachita parish shows at present that the two judicial mortgages in favor of the Kingsland & Douglas Manufacturing Company prime in date of registry the mortgages held by Mrs. Seale, one of which is stated to be a judicial mortgage against Lee and Parks, and the other a judicial mortgage against Lee, but that between the two judicial mortgages of the Kingsland Company stands recorded the special mortgage on this property which had been granted by Webb to Lee while the former held title thereto under the sale to him from Lee, which title has been adjudged a simulation at the instance of Mrs. Seale, and we find, secondly, that the record in Union parish shows at present the first mortgage to be the judicial mortgage resulting from the registry of the judgment of the Ouachita National Bank against Lee for three thou-

sand dollars, with interest, which was decreed fraudulent so far as it affected the rights of Mrs. Seale, while next to it is declared to be a judicial mortgage in favor of Mrs. Seale against J. M. Lee *et al.,* and following this mortgage is a judicial mortgage in favor of the Kingsland & Douglas Manufacturing Company against Lee and Parks. *Prima facie,* the mortgage rights of the Kingsland Company give that company preference in Ouachita parish over those of Mrs. Seale, and *prima facie* the mortgage rights of Mrs. Seale give her preference in Union parish over the Kingsland Company. It may be well to state here that there is some doubt as to whether the certificates in both parishes be not in error when they refer to the judicial mortgage resulting from the registry of the judgment in the matter of Mrs. Seale, in Seale vs. Lee *et al.,* as being a judicial mortgage against Lee. We find in the record a judgment against Parks in that case, but none against Lee.

It is contended on behalf of Mrs. Seale that, notwithstanding that her judicial mortgages in Ouachita parish are recorded after those of the Kingsland Company, her rights none the less prime those of that company, for the reason that the special mortgage given by Webb to Lee stands recorded ahead of their judicial mortgages, and that special mortgage having been set aside at her instance by judgment as fraudulent and simulated, she was subrogated to the rights which the holder of that mortgage would have been entitled to had that mortgage been valid or if not subrogated she should be "substituted" on the record to the place occupied by that mortgage with corresponding rights.

Subrogation to another person's rights is measured by the rights of the latter. If the second person has no rights, then the subrogee can take none. In this case, at the express demand of Mrs. Seale herself, the special mortgage has been declared non-existing—not real. We must, therefore, strike it from the record, so far as "subrogation" is concerned, but Mrs. Seale's counsel insists that Mrs. Seale's mortgage must pass into and occupy the space left vacant by the erasure of this mortgage, by reason of the fact that that erasure was accomplished through her instrumentality and at her expense.

The same position was taken by one of the parties in the case of Lambert vs. Saloy (37 Ann. 3), but it was not sustained. The *syllabus* to that case declares that "in a pursuit by numerous creditors of their common debtor's property, the creditor who has recourse to a revoca-

tory action, in order to annul a fraudulent transfer of his property by his debtor, will obtain no preference over the other creditors by reason of his revocatory action, if it appears from the evidence that the attacked transaction was not only "fraudulent" but also "simulated" and "unreal." In such a case the creditors who ignored the pretended transfer and who proceeded by attachment will have priority. "The only difference between that case and the present is that the Kingsland Company's priority of rank over Mrs. Seale did not result from an attachment but from having fixed prior mortgage rights on the property. The company has done nothing to lose its actual rank, and we think it is entitled to preference of payment upon their judgments over Mrs. Seale to so much of that portion of the sum of five hundred and sixteen dollars (less costs) in the hands of the sheriff which represents the balance unpaid of the undivided half of the Port Union Plantation which belonged to John M. Lee, Jr., as represents the *pro rata* value of that property situate in Ouachita Parish relative to that in Union Parish.

We next come to the *Parish of Union.* If the certificate of the clerk and ex-officio recorder of that parish be correct when it declares the judicial mortgage following next to that of the Ouachita National Bank is a judicial mortgage, in favor of Mrs. Seale against Lee, then Mrs. Seale will have priority over that bank and other mortgage creditors of Lee upon that portion of the fund of five hundred and sixteen dollars (less costs) in the hands of the sheriff, which represents the *pro rata* value of the part of the Port Union Plantation which is situated in that parish relative to the value of that part situated in the Parish of Ouachita. If, however, there is a mistake in that certificate, and Mrs. Seale has not such a mortgage, the question arises what the situation will be as to priority over that portion of the fund between the Ouachita National Bank, Mrs. Seale, and the Kingsland & Douglas Manufacturing Company. We will then be called on to make a proper application to this case of the principle of *si vinco vincentem te a fortiori vincam te."*

The Kingsland & Douglas Company can argue that if they are prior in rank to Mrs. Seale, and Mrs. Seale is ahead of the Ouachita Bank, *a fortiori* should they be ahead of the bank that the bank with its judgment and judicial mortgage must pass to the rear of Mrs. Seale and the Kingsland & Douglas Manufacturing Company; but Mrs. Seale can reply that she herself is ahead of the Ouachita Bank only by reason of

the judgment which she had obtained in the revocatory action which set aside the bank's judgment only in so far as she was concerned. That so far as the Kingsland Company was concerned the bank's mortgage retained the full force and effect as first in rank and its rights, therefore, had priority over those of the Kingsland & Douglas Company. That if the bank ranked the Kingsland & Douglas Company the latter had no interest whether the money which, but for the judgment in the revocatory action, would be given to the bank should, by reason of the special relations between it and Mrs. Seale, be turned over to Mrs. Seale. That all that the Kingsland & Douglas Company could insist upon would be that no greater amount of prior rights should be placed ahead of them than the amount of the judicial mortgage of the Ouachita Bank; that the contest up to that amount would be between Mrs. Seale and the Ouachita National Bank, which contest the Kingsland & Douglas Company have no concern with; that if this were not so the Kingsland & Douglas Company would be gaining an advantage at Mrs. Seale's expense, for which it could assign no legal reason.

That she does not claim the right to displace the fixed rights of the Ouachita Bank, the Kingsland & Douglas Company or other parties *inter se,* but only to take a sufficient sum out of the amount which would go to the Ouachita National Bank to make effective the judgment in the revocatory action to the extent necessary and to make good her own rights. That if the whole of the amount of the Ouachita Bank judgment would not be needed for that purpose, the balance should, as between the bank and the Kingsland & Douglas Company, be paid to the bank; that to the extent of the amount diverted from the bank and paid to Mrs. Seale, the bank would become an ordinary creditor *quoad* parties holding mortgage rights ahead of Mrs. Seale. In Turner vs. Parker, 10 Rob. 162, this court quoted the following extract from 2nd Vol. Trolong on Privileges and Mortgages, No. 600:

"Pierre emprunte de l'argent à *Tertius* sous l'hypothèque du fonds Cornélien. La femme de Pierre comparait au contrat, et renonce à son hypothèque sur ce fonds. Pierre étant tombé en faillite le fonds Cornélien est vendu; alors se presentent à l'ordre, 1° la femme de Pierre pour 4000 francs; 2° *Secundus* pour 5000 francs; 3° *Tertius* pour 4000 francs.

"D'après l'argument qu'on peut tirer de la loi Claudius Felix 16 Dig. *qui potior,* voici ce qui arrivera.

"On prélevera (deduct or first take out, see Articles 1879, *et seq.,*
C. C. French and English text, Code of 1825) les fonds dus à la femme
de Pierre, mais cette somme sera donnée a *Tertius* en vertu de la
renonciation que l'épouse a faite en sa faveur. *Secundus* touchera
ensuite en deuxieme ordre les 5,000 francs qui lui sont dus. S'il reste
des fonds, la femme les prendra en place de *Tertius.* Ainsi l'épouse
sera créancière chiragraphaire á l'égard de *Tertius.* Mais son rang
n'en subsistera pas moins pour laisser *Secundus* au second rang car ce
qui est intervenu entre *Tertius* et l'épouse de Pierre est pour lui *res
inter alios acta.* 10 Touillier, No. 197. Dig. B 20, T. 4 L. 16, *Qui
potiores."*

This doctrine was applied in Poché vs. LeBlanc, 12 Ann. 783, where
the right of "subrogation" of the later mortgage creditor to the rights
of the renouncing wife was denied, but his right was sustained as
to taking a certain amount by reason of the renunciation. The only
difference between the principle as applied thus and the application
sought to be made here consists in the fact that in those cases there
was a conventional renunciation of rank in favor of another, while
here the postponement of rank is due to the law and to a judgment of
court.

We think the claims of Mrs. Seale are, to this extent, supported by
equity and if they are not directly, they are consequentially warranted
by the law.

The Kingsland & Douglas Company insists that the judgment
annulling the judgment of the Ouachita Bank enures to the benefit of
all the creditors of Lee, but a "fraudulent" judgment is not an absolute
but a relative nullity. Article 1977 of the Code declares expressly that
in a revocatory action the contract shall be avoided as "to its effect"
upon the "complaining" creditors. Article 1881 of the Code declares
that "engagements made through fraud" are not "absolutely" "null,
but are voidable by the parties who have contracted under the influ-
ence of such fraud."

A judgment fraudulent as to one person is not *necessarily* fraudulent
as to another. (C. C. 1993.) We were doubtful for some time as to
the scope as between Mrs. Seale and the bank of the judgment in the
revocatory action upon the rights of the parties.

The judgment followed the terms of Article 1977 and declared that
the judgment in favor of the Ouachita Bank should be set aside as to
its effects on Mrs. Seale without defining what the effects referred to
were. There is a class of cases where the judgment attacked is set

aside only to the extent of making the owner of the judgment, if the fraud consisted merely in the endeavor to obtain a preference over creditors under circumstances in which, by law, the endeavor to obtain such preference is declared to be a constructive fraud, only lose the advantage endeavored to be secured by such conduct."

Upon the assumption that the debt recognized by the judgment of the bank was, in fact, "a just debt," and that the fraud consisted in the attempt by quickness of judicial action by consent of the creditor and debtor to secure a preference through a judgment, the result of the judgment might be simply to place the two judgments on an equality of right.

The judgment in the revocatory action in this particular case did not merely "restrain" or limit the effect of the banks' judgment, but "set aside" the judgment. We, therefore, have concluded that we should, *quoad* Mrs. Seale, consider it as entirely set aside. There have been cases where maintaining an opposition made by one creditor to the claim of another on the ground of fraud has been declared to enure to the benefit of all the creditors, but we do not think this rule applies to a judgment obtained by a single creditor acting independently of others in an ordinary revocatory action.

For the reasons herein assigned it is ordered, adjudged and decreed that the judgment of the District Court be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the sheriff of Ouachita Parish, after payment of the judgment of the seizing creditor, do pay over to Mrs. Seale all of the money paid to him by her under the adjudication made to her of the Port Union plantation in execution of the judgment of L. W. Stubbs, except the sum of five hundred and sixteen dollars.

It is further ordered, adjudged and decreed that this cause be and the same is remanded to the District Court with directions to have ascertained the relative values of the portions of that plantation situated in the Parishes of Ouachita and Union, and having ascertained said relative value to distribute the said sum of five hundred and sixteen dollars between Mrs. Seale, the Kingsland & Douglas Manufacturing Company, Limited, and the Ouachita National Bank, according to the views and in conformity with the principles herein announced. Costs of these proceedings to be borne by the said fund of five hundred and sixteen dollars.